5 So.3d 941 (2009)
Armond ADAM,
v.
The STATE of Louisiana Through The DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Peter W. Adam et al.,
v.
The State Of Louisiana Through The Department Of Transportation And Development.
No. 2008 CA 1134, 1135.
Court of Appeal of Louisiana, First Circuit.
February 13, 2009.
*943 Vincent J. Glorioso, New Orleans, LA, for Plaintiff/Appellee/2nd Appellant Armond Adam.
Christopher P. Ieyoub, H. David Vaughan, Lake Charles LA, for Plaintiffs/Appellees/2nd Appellants Peter Adam et al.
James D. "Buddy" Caldwell, Attorney General, Patrick J. Berrigan, Assistant Attorney General, D. Rex English, Assistant Attorney General, Slidell, LA, for Defendant/Appellant/2nd Appellee Louisiana Department of Transportation and Development.
Before: KUHN, GUIDRY, and GAIDRY, JJ.
GUIDRY, J.
In this appeal, the State of Louisiana, through the Department of Transportation and Development (the DOTD) seeks review of the trial court's decision to grant the plaintiffs' motion for a directed verdict. The plaintiffs answered the appeal to seek review of the jury's allocation of 50 percent fault to the decedent driver in the single-car accident sued upon.

FACTS AND PROCEDURAL HISTORY
This matter stems from a fatal, single-car accident that occurred in Pearl River, Louisiana, on November 26, 2001. While on Louisiana Highway 41, heading south towards Louisiana Highway 11, Althea Adam drove her 1992 Geo Prism partially *944 onto the right shoulder. In an attempt to regain the roadway, Ms. Adam steered left, but overcorrected her steering, which caused her vehicle to skid sideways across the two-lane highway and overturn several times on the shoulder along the northbound lane of the roadway. Ms. Adam did not survive the accident. Details of the accident scene revealed that where Ms. Adam's vehicle initially left the roadway, there was approximately a four to six inch difference between the height of the roadway and the height of the contiguous shoulder, creating what is commonly referred to as a "drop off or "rut."
Two separate wrongful death actions were filed against the DOTD by the legal heirs of Ms. Adam (collectively "plaintiffs") on December 27, 2001, and November 14, 2002. A jury trial was held in this matter on September 17-19, 2007. Following the presentation of evidence, the plaintiffs moved for a directed verdict on the issue of the liability of the DOTD, which was granted by the trial court. As a result of the trial court granting the motion for directed verdict, the jury was left to decide: (1) whether any fault should be attributed to Ms. Adam; (2) if so, apportionment of fault between the DOTD and Ms. Adam; and (3) quantification of the damage claims asserted. In response to interrogatories propounded to it, the jury found Ms. Adam to bear some fault in causing the November 26, 2001 accident and allocated fault equally to Ms. Adam and the DOTD. The jury assessed a total damage award of $816,201.54, inclusive of special damages for funeral and medical expenses. A written judgment in conformity with the jury's verdict was signed on October 16, 2007. Thereafter, the plaintiffs filed a motion for judgment notwithstanding the verdict to contest the percentage of fault allocated to Ms. Adam by the jury. The trial court denied the motion.

ASSIGNMENTS OF ERROR
The DOTD suspensively appealed the October 16, 2007 judgment, alleging that the trial court erred in granting plaintiffs' motion for directed verdict at the close of evidence. In answer to the appeal, plaintiffs allege that the following errors were committed in the proceedings before the trial court:
1. The Trial Court erroneously responded to questions posed by the jury on seatbelt evidence by failing to notify counsel of those questions and by failing to respond with the correct legal instruction consistent with La. R.S. 32:295.1(e). The Trial Court's erroneous instructions to the jury questions caused the jury to assess 50 percent fault to Althea Adam, and the Trial Court erred by failing to correct that erroneous result on the Motion for Judgment Notwithstanding the Verdict.
2. The jury erred in allocating 50 percent fault to Althea Adam. All fault should have been assigned to DOTD.
3. The Trial Court erroneously signed an incomplete Judgment submitted by the DOTD pertaining to the hearing of December 6, 2007, which erroneous Judgment omitted all reference to the fact that the Trial court had granted plaintiffs' Motion to Tax Expert Costs.

DISCUSSION

LIABILITY OF THE DOTD
Generally, in order to recover damages against the DOTD, a public entity, a plaintiff must prove: (1) DOTD had custody of the thing that caused plaintiffs damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or *945 constructive notice of the defect and failed to take corrective measures within a reasonable time; and (4) the defect was a cause-in-fact of plaintiffs injuries. La. R.S. 9:2800; La. C.C. art. 2317; Netecke v. State, DOTD, 98-1182, p. 7 (La.10/19/99), 747 So.2d 489, 494.
The DOTD does not dispute that it had custody of Highway 41 and the abutting shoulder, that a defective condition existed along the roadway's shoulder, or that it had notice of the defective condition. Instead, the DOTD contends that the trial court erred in granting the plaintiffs' motion for a directed verdict because the evidence presented at trial was such that the jury may have concluded Ms. Adam's accident was not caused by the drop off along the roadway. Essentially, the DOTD argues that the evidence was insufficient to prove that the drop off between the height of the roadway and the adjoining shoulder caused Ms. Adam to over-correct when she steered her vehicle back onto the roadway. Thus, the DOTD alleges that the negligent actions of Ms. Adam were the sole cause of the accident. Additionally, the DOTD asserts that the defect of the drop off or rut abutting the roadway was so open and obvious that it should not be held liable.
A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Rabalais v. St. Tammany Parish School Board, 06-0045, p. 6 (La.App. 1st Cir.11/3/06), 950 So.2d 765, 769, writ denied, 06-2821 (La.1/26/07), 948 So.2d 177. However, if there is substantial evidence opposed to the motion; i.e., evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. Pratt v. Himel Marine, Inc., 01-1832, pp. 17-18 (La.App. 1st Cir.6/21/02), 823 So.2d 394, 406, writs denied, 02-2128, 02-2025 (La.11/1/02), 828 So.2d 571, 572.
On appeal, the standard of review for legal sufficiency of the evidence challenges, such as those presented by directed verdicts, is de novo. State, Department of Transportation and Development v. Restructure Partners, L.L.C., 07-1745, p. 11 (La.App. 1st Cir.3/26/08), 985 So.2d 212, 223, writ denied, 08-1269 (La.9/19/08), 992 So.2d 937. A directed verdict should be sustained on appeal where the reviewing court would find a jury verdict in favor of the party opposing the motion to be manifestly erroneous had the trial judge allowed the case to go to the jury. Roberson v. August, 01-1055, p. 5 (La.App. 4th Cir.5/29/02), 820 So.2d 620, 624.
The evidence in this case reveals that a drop off or deep rut existed in the area of the shoulder where the accident occurred. While there was no evidence of any defect in the roadway[1] to cause Ms. Adam to leave her travel lane and drive onto the shoulder,[2] the evidence does show that *946 once on the shoulder, in her attempt to drive back onto the roadway, Ms. Adam did encounter the significant drop off along the roadway.
The DOTD has a duty to maintain public highways in a condition that is reasonably safe for persons exercising ordinary care and reasonable prudence, which duty extends to the shoulders of highways as well. Cormier v. Comeaux, 98-2378, p. 6 (La.7/7/99), 748 So.2d 1123, 1127. This duty further encompasses the foreseeable risk that for any number of reasons, including simple inadvertence, a motorist might find himself traveling on, or partially on, the shoulder, and thus this duty extends to drivers who are slightly exceeding the speed limit or momentarily inattentive. Cormier, 98-2378 at 6, 748 So.2d at 1127.
Moreover, while the DOTD's duty does not extend to a motorist who has knowledge of a highway defect and a reasonable opportunity to avoid the harm, Hardenstein v. Cook Construction, Inc., 96-0829, p. 9 (La.App. 1st Cir.2/14/97), 691 So.2d 177, 184, writ denied, 97-0686 (La.4/25/97), 692 So.2d 1093, there was no proof presented at trial that Ms. Adam was aware of the drop off. Jane L. Triola, a local attorney who reported the existence of the drop off along the southbound lane of Highway 41 to the DOTD a week before Ms. Adam's accident, testified that she first noticed the drop off a few weeks prior to the accident and stated she was motivated to report the defect because her teenage daughter had just acquired her drivers' license and traveled that stretch of roadway.
One of Ms. Adam's children who regularly traveled on Highway 41 as a professional truck driver testified that despite the depth and length of the drop off, he "would have never seen it" because "when you are driving, you are not looking at the holes on the side of the highway unless you back off the highway and drop in to it, and you know it's there." Additionally, James Locke, a witness presented by the plaintiffs and accepted by the trial court as an expert in accident reconstruction, stated that he did not think the drop off would be obvious to most drivers traveling on Highway 41. He further testified that according to the American Association of State Highway and Transportation Officials in 1996, the drop off "creates an unreasonable hazard that most people can't comply with" if the maximum vertical difference is greater than two inches.
While the evidence does show (as will be discussed more fully later in this opinion) that Ms. Adam's reaction to the danger or risk presented by the drop off contributed to the accident, such does not require that the DOTD be absolved from all liability; rather, the evidence leans more to finding Ms. Adam comparatively at fault for the accident that occurred. Hence, we reject the arguments of DOTD in regard to this assignment of error.

IMPROPER COMMUNICATION WITH JURY
In their answer to the DOTD's appeal, the plaintiffs correctly note that the trial court erred in failing to notify counsel of communications with the jury during deliberations and in erroneously responding to questions posed by the jury. As provided in La. C.C.P. art. 1796:
A. If the jury, after retiring for deliberation, desires to receive information *947 on any point of law, they shall be conducted to the courtroom.
B. After giving notice to the parties, the court may give the appropriate instructions.
C. The court, after giving notice to the parties, may recall the jury after they have retired:
(1) To correct or withdraw an erroneous instruction.
(2) To clarify an ambiguous instruction.
(3) To inform the jury on a point of law which should have been covered in the original instructions.
(4) To give such further instructions as may be appropriate.
A judge who communicates with a jury without notifying the parties and recalling them to the courtroom, so that the interchange may be entered into the record, does so at his peril. All such communications will be subject to close scrutiny by an appellate court. Carpenter v. Hannan, 01-0467, p. 5 (La.App. 1st Cir.3/28/02), 818 So.2d 226, 229-230, writ denied, 02-1707 (La.10/25/02), 827 So.2d 1153.
The following inquiries by the jury and responses by the trial court were made during deliberations without notice to the parties:
Juror: "Coroner report says not wearing seatbelt but shoulder strap only. No one discussed it. How do we handle it[?]"
Trial Court: "You must rely upon your common recollection of the evidence and your personal experience in life during your deliberations."
Juror: "Can we assign fault to the plaintiff for failure to wear her complete seatbelt?"
Trial Court: "I can not comment on this." The parties learned of these communications between the trial court and the jury after judgment was rendered.
In addition to improperly communicating with the jury during deliberations, the trial court failed to properly instruct the jury regarding the questions posed. Subsection A(l) of La. R.S. 32:295.1 provides that a driver of a passenger vehicle is required to "have a safety belt properly fastened about his or her body at all times when the vehicle is in forward motion," but Subsection E stipulates that "[i]n any action to recover damages arising out of the ... operation of a motor vehicle, failure to wear a safety belt in violation of this Section shall not be considered evidence of comparative negligence. Failure to wear a safety belt in violation of this Section shall not be admitted to mitigate damages."
Thus, the trial court clearly erred in: (1) failing to notify the parties of the jury's questions and its instruction; and (2) failing to instruct the jury that it could give no consideration to the fact that Ms. Adam was not wearing a complete seatbelt at the time of the accident in assessing fault.
Based on these legal errors, this court must determine, de novo, the issue of Ms. Adam's comparative fault, if any. See Rideau v. State Farm Mutual Automobile Insurance Company, 06-0894, p. 12 (La. App. 1st Cir.8/29/07), 970 So.2d 564, 576, writ denied, 07-2228 (La.1/11/08), 972 So.2d 1168; Lawson v. Straus, 98-2096, p. 6 (La.App. 4th Cir.12/8/99), 750 So.2d 234, 239, writ denied, 00-0120 (La.3/17/00), 756 So.2d 1144.

LIABILITY OF MS. ADAM
In assessing the nature of the conduct of the parties, various factors may influence the degree of fault, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances *948 which might require the actor to proceed in haste, without proper thought. Clement v. Frey, 95-1119, p. 8 (La.1/16/96), 666 So.2d 607, 611.
Mr. Locke, the plaintiffs' accident reconstruction expert, testified regarding the extent of the drop off based on photographs of the accident scene taken by police officers with the Pearl River Police Department, witness testimony, and his inspection of the tires on Ms. Adam's vehicle.[3] Based on this evidence, Mr. Locke concluded that the drop off was a minimum of four inches in height. The depth of the drop off or rut, which was estimated to be about six feet long, was not uniform, so at some points the height of the drop off was less and at other points greater than the minimum height of four inches that Mr. Locke determined. Mr. Locke explained that the scrubbing condition on the tire of Ms. Adam's vehicle indicated that her vehicle did not have enough vertical height to climb out of the rut when she turned her steering wheel to drive back onto the roadway, but while traveling in the rut, she reached a point where the drop off depth decreased enough for Ms. Adam's vehicle to "grab hold of the edge of that pavement and bring the car back on" the roadway.
At the point in time when Ms. Adam was able to drive the car back onto the roadway, the speed of her vehicle was 45 miles per hour, and combined with turning of her wheel to the left, Mr. Locke opined that "[t]he car is going to take off diagonally across the roadway," which is what occurred in this case.
While Mr. Locke further opined that Ms. Adam was "attentive to what was going on" after she encountered the drop off based on her perception response time, he still acknowledged that "she inadvertently allowed the vehicle, right side tires of the vehicle [to] come off ... the roadway." He further characterized his supposition that "she is probably off the gas as she is trying to get back on" as the action of "[a]ny reasonable prudent person." As Mr. Locke explained, "in real world collisions[,]... it looks like what any reasonable prudent driver would do. That is to steer gradually. Not to jerk the steering [wheel]. And that's what they teach us in driver's training is to steer gradually and reduce our speed." Mr. Locke testified that his research revealed that most states instructed drivers to slow down and "very, very slowly start trying to steer back onto the road."
On cross examination, Mr. Locke admitted that he estimated the speed at which Ms. Adam was traveling at the time the accident occurred based on the markings left on the roadway, since he did not know exactly where Ms. Adam's vehicle first left the roadway into the rut. He further admitted that if Ms. Adam had traveled in the rut until her vehicle stopped, the accident would not have occurred. When asked to explain the proper course of action to take when driving in a rut, Mr. Locke stated:
Well, what you should do is you should lift off the accelerator, slowly decrease your speed. And if you are in a rut, and you know for a fact that a steering input is not going to work, don't keep putting a steering input in if it doesn't go. Just slow your speed down. And eventually, either come to a stop or wait until you get slow enough where you can safely remount the roadway. That's what you should do."
A motorist who was traveling northbound on Highway 41 at the time of the *949 accident testified that he did not see any animal dash in front of Ms. Adam's vehicle that would cause her to swerve. The witness said he noticed the rut along the southbound lane after he had given his statement to the police and was preparing to leave the scene.
Ms. Adam's son, Sidney Adam, testified that his mother obtained her driver's license in 1984, shortly after his father died, and that since becoming a licensed driver, Ms. Adam had not been involved in any accidents nor received any traffic citations. All of Ms. Adam's relatives who testified children and grandchildrenstated that she was healthy and was not taking any medication at the time of her death. There was no evidence presented to indicate that Ms. Adam had any reason to rush or proceed in a hurry at the time of the accident. Shortly before the accident occurred, Ms. Adam spoke to her daughter and informed her that she was preparing to leave to pick up a young boy she cared for in the afternoons.
Based on this evidence, we believe the record supports a finding that some fault in causing the accident is attributable to Ms. Adam. A driver of a vehicle who fails to respond prudently once the vehicle has left the roadway is proportionately at fault, Lee v. State, 98-2559, p. 4 (La.App. 1st Cir.12/28/99), 751 So.2d 321, 324. While we believe the DOTD was in the superior position of addressing the risk presented by the drop off based on its knowledge of the defect from the citizen complaint and its bi-weekly inspections of the area where the accident occurred, we nonetheless find that the evidence shows that Ms. Adam contributed to the harm she suffered and therefore should not be absolved of all fault. Accordingly, we find that the highest percentage of fault that could be attributed to Ms. Adam was 25 percent. The judgment will be amended to reflect this adjustment in the percentage of fault. See Harris v. State, Department of Transportation and Development, 07-1566 (La.App. 1st Cir.11/10/08), 997 So.2d 849; Everhardt v. Louisiana Department of Transportation and Development, 07-0981 (La.App. 4th Cir.2/20/08), 978 So.2d 1036; Hussey v. Russell, 04-2377 (La.App. 1st 3/29/06), 934 So.2d 766, writ denied, 06-0962 (La.6/14/06), 929 So.2d 1269; Bozeman v. State, 34,430 (La. App.2d 4/4/01), 787 So.2d 357, writ denied, 01-1341 (La.6/29/01), 794 So.2d 813; Lee v. State, 98-2559, 751 So.2d 321.
We further find merit in the plaintiffs' final assignment of error. Although the trial court signed two judgments pertaining to its ruling on the plaintiffs' motion for judgment notwithstanding the verdict, decreeing in both judgments that the motion was denied, the second judgment further adds the trial court's ruling on the plaintiffs' motion to tax costs, which would constitute a substantive amendment of the first signed judgment.
When a trial court substantively amends a judgment without recourse to the proper procedure, the amended judgment is an absolute nullity. Louisiana jurisprudence further provides that when a trial court signs a judgment and then signs another, the second judgment is an absolute nullity and without legal effect. Mack v. Wiley, 07-2344, p. (La.App. 1st Cir.5/2/08), 991 So.2d 479, 486.
As the proper recourse for an error of substance within a judgment is a timely application for new trial, or in this case, a timely appeal, Bourgeois v. Kost, 02-2785, p. 5 (La.5/20/03), 846 So.2d 692, 695, we will amend the first judgment signed by the trial court to reflect the granting of the motion to tax costs in favor of the plaintiffs.

CONCLUSION
For the foregoing reasons, we amend the October 16, 2007 judgment of the trial *950 court to allocate 75 percent fault to the DOTD and 25 percent fault to Ms. Adam for causing the November 26, 2001 accident. Accordingly, the amounts awarded to the plaintiffs will be increased to the following amounts to reflect the change in the percentages of fault assessed to the DOTD and Ms. Adam: the awards to Peter Adam, Camille Adam Bischoff, Sidney Adam, Patricia Adam Ramil, Robert Adam, and Armond Adam are increased to $68,189.06; the awards to Tammy Manint, Darek Reattte (on behalf of Gabrielle Reatte), Randy Adam, and Rhonda Adam Andrews are increased to $34,094.53; and the awards to James Spano, Jr., Sherry Gabriel, Shannon Perry Adam Bischoff, and Courtney Martinez Crawford are increased to $17,047.27. In all other respects, the October 16, 2007 judgment is affirmed.
We also amend the December 20, 2007 judgment appealed by the plaintiffs to grant the plaintiffs' motion to tax costs in the amount of $19,509.02 against the DOTD. All costs of this appeal, in the amount of $2,096.97, are assessed to the State of Louisiana, through the Department of Transportation and Development.
JUDGMENTS AMENDED, AND AS AMENDED, AFFIRMED.
NOTES
[1] "Roadway" is statutorily defined as "that portion of a highway improved, designed, or ordinarily used for vehicular traffic, exclusive of berm or shoulder." La. R.S. 32:1(59) and 48:1(17) (emphasis added). A "highway" is generally defined as "the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel, including bridges, causeways, tunnels and ferries; synonymous with the word `street.'" La. R.S. 32:1(25). See also La. R.S. 48:1(9).
[2] "Shoulder" is statutorily defined as "the portion of the highway contiguous with the roadway for accommodation for stopped vehicles, for emergency use and for lateral support of base and surface." La. R.S. 32:1(65) and 48:1(20).
[3] The record reveals that before 7 a.m. the next morning, the DOTD had repaired the area of the drop off along Louisiana Highway 41 where the accident occurred.